**TROY v. MOHAWK SHOP, Inc.**

Civ. A. No. 2597.

District Court, M. D. Pennsylvania.

Aug. 9, 1946.

Frederick V. Follmer, U. S. Atty., and Joseph P. Brennan, Asst. U. S. Atty., both of Scranton, Pa., for petitioner.

Philip V. Mattes, of Scranton, Pa., for respondent.

WATSON, District Judge.

This is an action for enforcement of a veteran's right to re-employment under the Act of September 16, 1940, as amended, 50 U.S.C.A.Appendix, § 308.

The case was tried on May 29, 1946 before the Court, sitting without a jury. Testimony was taken, following the transcription of which arguments by counsel for both sides were heard and briefs were filed.

### Discussion

The testimony and exhibits offered in the case reveal the following:

Meyer Troy, hereafter referred to as the petitioner, was employed by the Mohawk Shop, Inc., hereafter referred to as the respondent, for a period of about a year and a half from June, 1940 to December 20, 1941. The Mohawk shop is a store handling coats, suits, dresses, and evening wear for women, with an all female staff with the exception of the petitioner, when he was employed there, and the janitor. In the words of the corporation's president, who hired the petitioner in 1940, the petitioner was in charge of the shop in the absence of the corporation president, George Bauer, or the corporation Vice-President, Jean Bauer (Mrs. George Bauer), the Bauers being present only a few days each month. Petitioner had authority to hire and fire employees, to keep the books of the store and the cash, and to trim the windows. Petitioner testified to several additional duties but those described above are sufficient to show the nature of petitioner's responsibilities. On December 20, 1941, at which time his salary was $50 a week, petitioner enlisted and entered into active duty in the Army of the United States, where he remained until January 12, 1946, at which time he was granted his honorable discharge and separated from active duty.

Petitioner, following his discharge, duly applied for reinstatement to the position held by him before his enlistment. On February 10 and February 24, 1946, Mr. Bauer wrote letters to the petitioner stating that " * * * the girl manager * * * has done a most satisfactory job. * * * I * * * can't see any sense of disrupting a smooth running organization at this time and under these circumstances."

Upon receipt of these letters, petitioner advised his Local Selective Service Board of his difficulties which, in turn, took steps which brought about a request for petitioner's return to employment at the store.

Petitioner reported for work March 7, 1946, and was rehired by Mrs. Bauer, Vice-President of the defendant corporation. There was some variance as to exactly what the petitioner's duties were upon his reinstatement, but it is clear from the following excerpts of testimony of Mr. Bauer, the President of the defendant corporation, what petitioner's status was, both before and after the period he spent in the service.

"Q. You did not keep these books? A. I did not.

"Q. They are kept by whom? A. By Miss Anthony.

"Q. What is her title? A. She is in charge of the store at the present; she is

manager of the store when I am not present, or when my wife is not present.

"Q. When Mr. Troy was there did he keep these books? A. He did.

"Q. He kept them for a year and a half? A. Yes, sir.

"Q. Who did you say the present manager was? A. When I am not present, and my wife is not present, Miss Helen Anthony is manager.

"Q. What is her salary at the present time? A. $55.00.

"Q. When was she hired as acting manager when you or your wife are not there? A. At the time Mr. Troy entered the Service, I put Miss Anthony in charge.

"Q. So Miss Anthony succeeded to Mr. Troy's position? A. Right.

*     *     *     *     *     *

"Q. Did you refuse to rehire him? A. I did.

"Q. You refused in writing to rehire him? A. I did.

"Q. You subsequently rehired Mr. Troy, after the receipt of a letter, copy of which is marked 'Petitioner's Exhibit No. 4'? A. It was not on account of that letter; it was on account of me not knowing the law at that time, that I was required to rehire a veteran, and I instructed Mrs. Bauer to send for him and put him back at the same salary as manager of the floors and to sell when it was necessary.

*     *     *     *     *     *

"Q. What do you mean by 'floor manager'? A. A floor manager has the duty to see that sales are made if possible. If the saleslady is waiting on a customer and is having a little difficulty with the customer, it is the duty of the floor manager to assist to make the sale.

"Q. Had that been his position before he left to go into the service? A. It was part of his duty.

"Q. Of what did his duty consist? A. Taking charge of the books, taking charge of the cash, hiring and firing, taking charge of the floor, trimming windows occasionally.

"Q. When he was rehired he was not given that same authority? A. No, sir, he was not.

"Q. He was no longer to have anything to say in the hiring and firing of employees? A. That is right.

"Q. When Mr. Troy was rehired he was not to have any access to the records? A. That is right.

"Q. When Mr. Troy was rehired he was instructed he was not to have any access to the cash? A. Right.

"Q. When Mr. Troy was rehired was Miss Anthony continued in the same position she had occupied prior to Mr. Troy's re-employment? A. She was.

"Q. Does Miss Anthony have authority to hire and fire employees? A. She has when I am not present; when I am not present she has the authority to hire and fire employees.

"Q. Is Miss Anthony in charge of the books during your absence? A. She is.

"Q. Has she been so in charge of your books since Mr. Troy went into the Service? A. She had. * * *"

Section 8 of the Selective Service Act; 50 U.S.C.A.Appendix, § 308, provides, inter alia, as follows: "If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so."

■ Two questions and answers taken from the above excerpts of testimony and supported by the evidence make it apparent that the petitioner was not given a position of like seniority, status, and pay. They are as follows:

"Q. So Miss Anthony succeeded to Mr. Troy's position? A. Right. * * *

"Q. When Mr. Troy was rehired was Miss Anthony continued in the same position she had occupied prior to Mr. Troy's re-employment? A. She was."

Petitioner was not restored to a position of like pay since the person who held his

position received $55 per week, and he was rehired at the old salary of $50 per week. The circumstances of the respondent corporation were not shown to have changed so as to make it impossible or unreasonable to rehire the petitioner in his old status. In addition, petitioner has testified to his willingness, ability, and preparedness to resume his prior position.

■ This case was clouded by some personal disagreements and unpleasantness between the parties resulting in allegations of lack of good faith on the part of the petitioner. The argument that the petitioner was planning to run a competitive business and was, therefore, deprived of access to the records of the firm is not cognizable under the Act. Likewise, it was immaterial that the petitioner did not desire at first to return to his job. He is given ninety days under the Statute to apply for his old position and, whatever his plans before applying, upon application within ninety days of discharge, he is entitled, providing all the other requisites are met, to be reinstated in his old position.

Petitioner was re-employed on March 7, 1946 as "Floor Manager", which entailed waiting on women customers, which duty he allegedly shirked. Although there was evidence which might reflect upon the character of the petitioner it does not disqualify him from being entitled to his previous position. As a result of these difficulties, petitioner was discharged after three and one-half weeks on March 30, 1946 by a formal letter signed by Mrs. Bauer, Vice-president of the respondent.

Petitioner seeks restoration to his former position guaranteed for one year by Statute, and also compensation for his loss of wages or benefits suffered by respondent's action.

■ In a stipulation filed following the trial both parties agreed that petitioner received no other income since the time he applied for reinstatement to his position to date. He did receive the sum of $240 Servicemen's Readjustment Allowance under the Act which does not constitute earnings in other employment, and which sum the respondent, Mohawk Shop, Inc., is not entitled to credit against loss of wages caused by its unlawful actions. Hoyer v. United Dressed Beef Co. et al., D.C.S.D. Cal., 67 F.Supp. 730. (Yankwich, Judge).

## Findings of Fact

1. Petitioner, Meyer Troy, was employed in a managerial capacity by the Mohawk Shop, Inc., for a year and a half prior to December 20, 1941.

2. Petitioner entered the Army of the United States December 20, 1941 and, after four years and twenty three days, was granted an honorable discharge.

3. Petitioner applied for reinstatement to his former position and was refused it in a letter by the President of respondent, postmarked February 10, 1946.

4. The position which was offered him, and which he held for three and one half weeks, was unlike his former position in seniority, status, and pay.

5. Petitioner, though re-employed on March 7, 1946, was not restored to a position of like duties and responsibilities, and was discharged therefrom on March 30, 1946.

6. Meyer Troy was never re-employed by the Mohawk Shop, Inc., in the position which he held before entering the service.

7. Respondent corporation's circumstances have not so changed as to make it impossible to rehire the petitioner.

8. Petitioner is prepared and willing to resume his prior position.

9. Petitioner obtained no earnings in other employment, but did receive the sum of $240 Servicemen's Readjustment Allowance.

## Conclusions of Law

1. Meyer Troy is lawfully entitled to be restored to that position which he held prior to his entry into the service at the rate of pay of $55 per week for 52 weeks; and may not be discharged from that position without cause within that time.

2. Meyer Troy is entitled to be compensated by Mohawk Shop, Inc., for loss of wages and benefits suffered by reason of its unlawful action, at the rate of $55 per week from April 1, 1946, the date fol-

lowing his discharge, until he shall have been restored, or offered restoration, to his former position by the Mohawk Shop, Inc.

3. Meyer Troy is further entitled to be compensated by Mohawk Shop, Inc., for the loss of wages during his three and one half weeks employment at the Mohawk Shop, Inc., from March 7 to March 30, 1946, at the rate of $5 a week, representing the difference between the salary he was receiving and that to which he was entitled.

4. The readjustment allowance paid to Meyer Troy by the United States does not constitute earnings in other employment, and the Mohawk Shop, Inc., is not entitled to have the payments made under such allowance credited against loss of wages caused by its unlawful actions.

Now, August 9, 1946, it is ordered as follows:

1. That the respondent, Mohawk Shop, Inc., its officers, agents, servants, and employees be, and are hereby, specifically directed to offer to Meyer Troy re-employment and restoration to his former position at the rate of pay of $55 per week.

2. That, at the time of the making of such offer, to tender and pay to Meyer Troy the amount of money which then equals the sum of $55 multiplied by the number of weeks, plus any fraction of a week, included within the period of time from April 1, 1946, until the Mohawk Shop, Inc., shall have made to Meyer Troy such offer of restoration, plus the sum of $5 a week, representing the difference between the salary he was receiving and that to which he was entitled for the period March 7, 1946 to March 30, 1946.

3. That the respondent, its officers, agents, servants, and employees be, and hereby are, directed, upon the acceptance of said offer by Meyer Troy, not to discharge Meyer Troy from such position without legal cause within 52 weeks from the date upon which he shall have been so restored.

4. That jurisdiction of this case is retained until the Mohawk Shop, Inc., shall have complied with the requirements of paragraphs 1 and 2 of this judgment.