Harold J. **DAME**

v.

**C. A. BATSON CO.**

Civ. A. No. 56-776.

United States District Court
D. Massachusetts.

Dec. 16, 1957.

As Modified Jan. 30, 1958.

Anthony Julian, U. S. Atty., Geo. H. Lewald, Asst. U. S. Atty., Boston, Mass., for plaintiff.

Haussermann, Davison & Shattuck, Eugene F. Endicott, Boston, Mass., for defendant.

ALDRICH, District Judge.

This is an action brought under the Universal Military Training and Service Act, § 9(b) as amended 50 U.S. C.A.Appendix, § 459(b), for wages and benefits lost by reason of defendant's failure to re-employ plaintiff after his military discharge. The defendant is a building contractor. On April 25, 1951 he hired the plaintiff as a general laborer. The plaintiff worked until July 3, 1951.

On that day either he did not report in, or he was laid off. On July 5 he was either transferred, or re-hired, by the defendant for a new project. I do not resolve these alternatives, deeming it immaterial. He continued to work for the defendant until October 31.[1] On that day he quit, informing the defendant he was enlisting in the Navy. It is possible that he did not actually enlist until a few days later, but by November 18th he had entered into duty. I find the plaintiff left his employment in order to enter the armed forces. He received an honorable discharge on November 14, 1953. On November 16 he applied for re-employment. The defendant told him things were slow, but that he would see what he could do. Over the next few weeks the plaintiff telephoned in from time to time, with no results. On April 16, 1954 the defendant offered him a job in another area. The plaintiff refused this position because he had no automobile. This he had no right to do.[2]

The defendant contends that plaintiff's employment was of a "temporary nature." In this respect defendant proved too much. His evidence was that as, due to the nature of his business, his requirements for unskilled labor were uneven, all labor was hired "by the job." This would mean, as interpreted by the defendant, that all of his labor employment was of a temporary nature. Many of defendant's employees were laborers. Such interpretation would do violence to

[1] There was a further dispute as to whether a shift of job sites in August was a transfer or re-hire. One of defendant's foremen described it as a transfer. The payroll records indicate that one day in August plaintiff did not work. It is not clear that this was the day between jobs. In any event, in some instances shifting jobs may have involved a day on which no work was available. The matter is of no significance. The important matter is whether plaintiff was consistently treated by defendant as employable for regularly available common labor. I find that he was.

[2] The plaintiff argues that he was always furnished transportation prior to his entering the service. I find this was an informal arrangement, sometimes with other employees, and not part of the defendant's obligation or undertaking. The Marion job offered to commence April 16 was not within the area of plaintiff's local union, but neither was the Middleboro job which was one of the two principal ones he had in 1951. It may have been inconvenient for plaintiff to go to Marion, but it is not a great distance from Brockton and it does not appear that he could not have gone if he had wanted to make the effort. If all of his 1951 jobs had been in the area of his local union I would have reached a different result, but I find this offer, made in good faith, satisfied defendant's obligation pro tanto.

the Congressional purpose, removing, by a simple contrivance, a large segment of his employees from the purview of the Act. The word "temporary" is not to be so construed. Even if on one or two occasions, over a period of six months, there was a day interval between jobs, the plaintiff is not to be classed as temporary help. Bochterle v. Albert Robbins, Inc., 3 Cir., 165 F.2d 942; United States ex rel. and for Use and Benefit of Stanley v. Wimbish, 4 Cir., 154 F.2d 773. The test suggested in Wimbish, that plaintiff must show in the past some preferential right or custom of re-employment, if his position was not continuous, I find has been met as to custom, but not as to right. Neither had any other of defendant's common laborers any such right, as distinguished from custom.

■■ The defendant was obligated to offer the plaintiff a position as common laborer whenever such work was available. Since, admittedly, there was no seniority among this class of employees,[3] that may even mean a certain amount of preference for the plaintiff, but this will not concern me because from time to time, after plaintiff had requested work, the defendant called on the union hall for laborers instead of notifying plaintiff. Indeed, defendant's entire position was that plaintiff had no rights under the Act. The fact that defendant may have believed this in good faith is, of course, immaterial. Karas v. Klein, D.C.D. Minn., 70 F.Supp. 469.

The only question remaining is what work defendant had available from November 17, 1953 to April 15, 1954. The defendant has submitted his payroll. I accept his distinction, confirmed by the business representative of plaintiff's union, between mason's helpers, and ordinary labor. On that basis defendant employed a person in a position occupiable by the plaintiff [4] on 104 days, for a total

of 819½ hours. The basic wage was $1.93 an hour. Judgment for the plaintiff for $1,581.64, with interest from the date of suit.

---

3. To this there was one exception, that the first laborer hired was to be a regular union steward. This, plaintiff was not.

4. In addition to mason's helpers I have excluded one Holyoke, who appears to have had some special contract, and two persons whom the union named as labor stewards. See note 3, supra.