**Donald R. BARRETT, Plaintiff-Appellee,**

v.

**GRAND TRUNK WESTERN RAILROAD COMPANY, Defendant-Appellant.**

No. 77–1584.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 12, 1978.

Decided July 17, 1978.

Rehearing and Rehearing En Banc
Denied Sept. 21, 1978.

Leonard S. Goslawski, Chicago, Ill., for defendant-appellant.

William H. Berger, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff-appellee.

Before PELL and TONE, Circuit Judges, and GRANT, Senior District Judge.*

PELL, Circuit Judge.

Plaintiff-appellee Donald R. Barrett was employed by defendant-appellant Grand Trunk Western Railroad Company as a locomotive fireman on October 25, 1963. He worked in that position until May 6, 1964, when he was severed from Grand Trunk's employ pursuant to the provisions of the Award of Arbitration Board No. 282.[1] Under the terms of that award, firemen, such as Barrett, hired less than two years prior to the award's effective date ("C–2" firemen), could be separated from a carrier's payroll with a lump sum separation allowance, and have "all of their employment and seniority rights and relations terminated . . . ." On April 26, 1965, Barrett was again employed by Grand Trunk, as a switchman. He worked in that capacity until January 20, 1966, when he was inducted into the United States Marine Corps. On January 12, 1968, he was honorably discharged from the Marine Corps.

Thereafter, he sought reinstatement as a Grand Trunk employee, and received it, as a switchman, on March 8, 1968, with a switchman seniority date of April 26, 1965. This much, the parties agree, was clearly his due

under the Military Selective Service Act, now codified at 38 U.S.C. § 2021 et seq.[2] The Act provides, on conditions indisputably met here, that any person "who leaves a position . . . in the employ of any employer in order to perform [military] training and service" "shall . . . be restored by such employer . . . to such position or to a position of like seniority, status, and pay." 38 U.S.C. § 2021(a)(2)(B)(i). Subsection (b)(2) adds the following:

It is hereby declared to be the sense of the Congress that any person who is restored to or employed in a position in accordance with [inter alia, the language just quoted] should be so restored or reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment.

Barrett claims that restoration to the job of switchman without loss of seniority was an inadequate satisfaction of his rights under the Act. He points out that in May 1966 Grand Trunk found itself in need of additional firemen. Apparently preferring to hire those with experience in the position to people without it, Grand Trunk canvassed many previously severed "C–2" firemen to determine their interest in becoming Grand Trunk firemen again. Only those "C–2" firemen predetermined to be unemployable or medically unfit, or who received unsatisfactory performance ratings when

---

* The Honorable Robert A. Grant of the Northern District of Indiana is sitting by designation.

1. Arbitration Board No. 282 was established by a unique law, Public Law 88–108, 77 Stat. 132, requiring compulsory arbitration of a major labor dispute which threatened to produce a devastating strike. The background is discussed in *Brotherhood of Railroad Trainmen v. Akron & Barberton Belt Railroad Company*, 128 U.S.App.D.C. 59, 66–70, 385 F.2d 581, 588–92 (1967), *cert. denied*, 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968); and Comment, *The Railway Work Rules Dispute—A Precedent for Compulsory Arbitration*, 14 *De Paul L.Rev.* 115 (1964).

2. The current codification is entitled the Vietnam Veterans' Readjustment Act of 1974. It carries forward without substantive change the provisions of the Military Selective Service Act which govern this case. These were previously found at 50 U.S.C. App. § 459. For convenience, we refer to these laws simply as the Act, and cite to the current codification.

severed in 1964 (neither of which factors would have applied to Barrett),[3] or who were known to be in military service were not canvassed. Barrett thus asserts that but for his military service, he would have been canvassed and given the opportunity to become a fireman at that time, and that this opportunity should have been made available on his return from the Marines, with retroactive seniority.[4]

Grand Trunk did not accede to Barrett's several requests for such treatment, and he became a fireman only on August 15, 1970, when his application for transfer, made pursuant to a generally posted vacancy announcement, was accepted. He brought this lawsuit to obtain his "proper" seniority date and back pay, and has been represented therein by the United States Attorney. 38 U.S.C. § 2022.

The district court granted Barrett's motion for "Partial Summary Judgment (On Issue of Liability)" on March 22, 1977. On March 25, the court issued an order *nunc pro tunc* as of March 22, ordering Grand Trunk to adjust its records by giving Barrett the earlier seniority date he sought, and ordering both parties either to stipulate or to proceed with discovery on the question of the amount of back pay.

■ Grand Trunk has appealed, invoking (without traverse by Barrett) 28 U.S.C. § 1291 as a jurisdictional basis. Our obligation to satisfy ourselves about our jurisdiction in each case brought before us has required us to look beyond the parties' agreement on this point. Because a "final decision" within the meaning of § 1291 "is one which ends the litigation on the merits and leaves nothing for the court to do but

execute the judgment," *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945), the district court's order, which expressly leaves the question of back pay for future resolution, is not a final appealable order. *See The Palmyra*, 23 U.S. (10 Wheat.) 502, 6 L.Ed. 375 (1825); *Baetjer v. Garzot Fernandez*, 329 F.2d 798 (1st Cir. 1964); *Taylor v. Board of Education of the City School District of the City of New Rochelle*, 288 F.2d 600, 602 (2d Cir. 1961), *cert. denied*, 368 U.S. 940, 82 S.Ct. 382, 7 L.Ed.2d 339; 9 Moore's Federal Practice ¶ 110.11 at 138 (1975).

Apparently recognizing this fact, Grand Trunk moved the district court to certify the case to us as one involving a controlling question of law, within the meaning of 28 U.S.C. § 1292(b). The motion was denied, as being "moot." We interpret this denial, cryptic as it is, as incorporating the district court's view that a basis for appeal was present without the certification. In this respect, we believe the court was correct, for the court's order expressly mandates that Grand Trunk act to correct Barrett's employment records, which, of course, was part of the substantive relief requested in the complaint. Accordingly, the order is an interlocutory one granting injunctive relief within the meaning of 28 U.S.C. § 1292(a)(1), and the case is properly before us. *See Roth v. Board of Regents of State Colleges*, 446 F.2d 806 (7th Cir. 1971), *rev'd on other grounds and remanded*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)[5]; *International Products Corporation v. Koons*, 325 F.2d 403 (2d Cir. 1963); *Zwack v. Kraus Bros. & Co., Inc.*, 237 F.2d 255 (2d Cir. 1956). *Compare George v. Victor Talking Machine Co.*, 293 U.S. 377, 55 S.Ct. 229,

---

3. Grand Trunk's argument in the district court that those with the same performance rating Barrett had were not canvassed has been abandoned on appeal.

4. The parties agree, and amicus Brotherhood of Locomotive Engineers argues at length, that the positions of switchman and fireman are separate crafts, and that each is a part of a distinct line of employee progression. Barrett, then, is rather obviously seeking enforcement of his asserted right to transfer, not a right to a promotion. It is also apparently undisputed

that the position of fireman has a higher gross earnings potential than that of switchman, and, significantly, leads to the position of locomotive engineer.

5. Far from weakening the authority of *Roth* as pertinent here, the Supreme Court's reversal of this court's decision on the merits implicitly supports the decision on jurisdiction, as that Court, just as this one, is obliged to satisfy itself that it has jurisdiction of the cases brought before it.

99 L.Ed. 439 (1934) (per curiam), *with Switzerland Cheese Association, Inc. v. E. Horne's Market, Inc.*, 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966).

We turn to the merits, cognizant of our duty liberally to construe the Act "for the benefit of those who left private life to serve their country in its hour of great need." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 285, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946), quoted in *Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977). "He who was called to the colors [is] *not to be penalized* on his return by reason of his absence from his civilian job." *Fishgold, supra,* 328 U.S. at 284, 66 S.Ct. at 1111 (emphasis added); *accord, McKinney v. Missouri-Kansas-Texas Railroad Co.*, 357 U.S. 265, 270, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958).

■ At oral argument in this court, counsel for Grand Trunk conceded what had not really been disputed in Grand Trunk's brief: that Barrett would have been given an opportunity to transfer to a fireman's position at the time of the May 1966 canvass of "C–2" firemen if he had not been in military service. This concession takes us a long way towards affirmance of the district court's order, for Congress, after all, has mandated that a person in Barrett's position must not only be rehired, but also accorded "such status . . . as [he] would have enjoyed if [he] had continued in such employment continuously." 38 U.S.C. § 2021(b)(2).

To counter the apparent import of this statutory language, Grand Trunk argues that the decision to canvass "C–2" firemen was an act of managerial discretion which had not occurred and was not foreseeable at the time Barrett entered the Marines, that Barrett could not have insisted on the transfer if he had stayed in Grand Trunk's employ and the opportunity had not been offered to him, and that this is accordingly not a case within the ambit of the Act.

Principal reliance is on *McKinney v. Missouri-Kansas-Texas Railroad Co., supra.*

Although *McKinney* appears in some ways to support Grand Trunk's position, we think the appearance is deceptive. Just as an employee who serves in the military is not to be disadvantaged because of his absence, the Act was not intended to operate to favor the veteran "as against his fellows." *Aeronautical Industrial District Lodge 727 v. Campbell*, 337 U.S. 521, 526, 69 S.Ct. 1287, 93 L.Ed. 1513 (1949); *accord, Fishgold, supra,* 328 U.S. at 286, 66 S.Ct. 1105. Section 2021(b)(2) guarantees to the veteran only the status he *"would have enjoyed."* (Emphasis added.) Determining what would have been is, by its very nature, a difficult task. Often we cannot know with any reasonable confidence. Thus to respect the principle that the veteran is not to be either disadvantaged or favored necessarily means there can be no "perfect reproduction" of what *"might* have been his" if he had not served his country. *McKinney, supra,* 357 U.S. at 271, 78 S.Ct. 1222 (emphasis added). The Act simply "does not assure him that the past with all its possibilities of betterment will be recalled." *Id.* at 271–72, 78 S.Ct. at 1226.

The classic instance of this is the situation found in *McKinney* itself. There an employee asserted his "right" to a promotion that had been given to his juniors in seniority, even though the pertinent collective bargaining agreement expressly made such promotions a matter of fitness, ability, and "the exercise of a discriminating managerial choice." *Id.* at 272, 78 S.Ct. at 1227. Where an employer has and exercises such discretion in promoting one employee over others, it may be possible to say that an individual's credentials and experience made him eligible for consideration, but there can be no reasonable certainty that the subjective factors which permissibly influence the choice would have produced a promotion for the individual. This is precisely what the Supreme Court held in *McKinney,*[6] because the Act's purpose is

---

6. Emphasizing that it was the actual exercise of managerial discretion that was not to be

second-guessed, the Court remanded to allow McKinney to plead and prove that as a result of

only to assure the veteran of the benefit of "those changes and advancements in status that *would* necessarily have occurred simply by virtue of continued employment." *Id.* (emphasis added). *See Tilton v. Missouri Pacific Railroad Co.*, 376 U.S. 169, 180, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).

Because what Barrett seeks is a change in status that would in fact necessarily have occurred if he had been continuously employed, *McKinney* cannot control this case. There is nothing here remotely akin to second-guessing a managerial evaluation of an employee's fitness for promotion, and relief for Barrett would pose no danger of "overriding an employer's discretionary choice," which concerned the Court in *McKinney.* 357 U.S. at 272, 78 S.Ct. 1222; *see Pomrening v. United Air Lines, Inc.*, 448 F.2d 609, 613 (7th Cir. 1971). Indeed, all Barrett is asking is to be given the benefit of management's discretionary choice, which was concededly exercised in favor of a class ("C–2" firemen with satisfactory performance ratings) from which he was excluded only because he was currently serving his country.

■ To be sure, the discretionary choice that would have given Barrett a transfer but for his military service, had not been exercised, and may not have been foreseeable at the time Barrett entered the Marines. That is not dispositive. *Tilton v. Missouri Pacific Railroad Co., supra*, 376 U.S. at 179–81, 84 S.Ct. 595, and its companion case, *Brooks v. Missouri Pacific Railroad Co.*, 376 U.S. 182, 184–85, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964), make clear that no rule of strict foreseeability applies under the Act.[7] The Act's requirement is simply that there be a reasonable certainty that the veteran would have enjoyed the status he claims but for

his service. *Witty v. Louisville & Nashville Railroad Company*, 342 F.2d 614, 616–17 (7th Cir. 1965). That requirement is met here.

Nor need the circumstance on which a claimant such as Barrett bases his claim have developed before military service was begun. In *Alabama Power Co. v. Davis, supra*, 431 U.S. 581, 97 S.Ct. 2002, 52 L.Ed.2d 595, a veteran was accorded pension credit for time in service, even though the pertinent pension plan was not established until after Davis entered the military. And in *Witty, supra*, the need for carmen mechanics had not developed and the promotional program to develop mechanics, on which Witty successfully based his claim for retroactive seniority, had not been adopted at the time Witty entered the service.

Grand Trunk's argument that Barrett would have had no right to demand the transfer if he had been continuously employed is basically irrelevant. "Status [within the meaning of § 2021(b)(2)] may be the result of a collective bargaining agreement, established employment practices of the employer, *or even some unilateral action of the employer.*" *Burke v. Boston Edison Company*, 279 F.Supp. 853, 856 (D.Mass.1968) (emphasis added).

*Wood v. Southern Pacific Co.*, 447 F.2d 486 (9th Cir. 1971), is instructive on this point. The district court there was also considering the consequences of the Award of Arbitration Board 282, which was made after the plaintiff entered the service. Plaintiff had, like Barrett, been a fireman; unlike Barrett, however, his seniority as a fireman was sufficient under the terms of the award to put him in the class of firemen

---

custom or practice, he would necessarily have been promoted if he had been continuously employed. 357 U.S. at 273–74, 78 S.Ct. 1222.

**7.** *Tilton* did suggest that a claim for retroactive seniority made by an employee who had been selected for a promotional training program, but whose training had been interrupted by military service, is sufficient if it is shown that it was reasonably certain as a matter of foresight that the employee would have completed the program and obtained advancement, and,

as a matter of hindsight, such did occur. This court has previously recognized that a foresight-hindsight test is useful outside the specific circumstances of *Tilton. Brickner v. Johnson Motors*, 425 F.2d 75, 77 (7th Cir. 1970). It is reasonable certainty, however, which is the generalizable test (as the authorities cited in *Brickner* indicate), not the foresight rule developed for guidance in the specific training context.

to whom the company was to offer comparable employment. The district court, after a full trial, expressly found that the award gave complete discretion to the company as to whether to offer, when to offer, what to offer, how many jobs to offer, and how long to offer them. This discretion was used to make differing offers in different seniority districts. 66 CCH Lab.Cas. ¶ 12,185, at 22,-689 (C.D.Cal.1969). Nonetheless, without overturning any of the district court's findings, the Ninth Circuit reversed the judgment for the company, because the company had in fact given those in Wood's work group the opportunity to be switchmen, and undeniably would have given Wood the same choice but for his absence on military service. *See also* Judge Grant's opinion in *Van Hoedt v. Wheelabrator-Frye, Inc.*, 77 CCH Lab.Cas. ¶ 11,148, at 19,928 (N.D.Ind. 1975), in which a veteran whose employment and seniority rights had expired under the collective bargaining contract after two years (post-service) on layoff status was held to have acquired new rights by the employer's unilateral act of recalling three employees junior to the veteran (whose seniority had also expired).

 A related point pressed both by Grand Trunk and amicus Brotherhood of Locomotive Engineers, that Barrett is seeking to switch between entirely separate crafts with the Act's assistance, is without merit. *Wood, supra*, flatly rejected a conclusion of the district court based on just such reasoning, and ordered cross-craft relief. Indeed, if opportunities to transfer are within the ambit of the status protected by the Act, and they are, *see Horton v. United States Steel Corporation*, 286 F.2d 710 (5th Cir. 1961); *Conner v. Pennsylvania R. Co.*, 85 U.S.App.D.C. 223, 177 F.2d 854 (1949), it is hard to understand even the premise of an argument based solely on an aversion to cross-craft relief.

The better formulation of the argument is that the decision to canvass "C–2" firemen benefitted people who were not then employed by Grand Trunk as well as those who were, and that switchmen *as a work group* were not canvassed. The latter point is quickly answered, as it is clear that switchmen with prior experience as firemen (such as Barrett) were canvassed. *See* the answers to plaintiff's second set of interrogatories. The former point is slightly more troubling, for pushed to an absurd conclusion, it might suggest that the fact of Barrett's employment with Grand Trunk when he entered the service was inconsequential, and that some ephemeral residual rights—inconsistent with the terms of the Award of Arbitration Board 282—are the only arguable bases for this action. Of course, that is not the case. The fact of Barrett's employment is critical to his success here; without it, he would not have left a position within the meaning of § 2021(a)(2)(B)(i). Once it is clear, though, that he left a position and had a right to be rehired, the question posed, and the only one we have been addressing, is what his status would have been if he had been continuously employed. The fact that the canvass that would have obtained for him a different and preferred status also benefitted those who were not then employed by Grand Trunk is irrelevant to that question.

For the reasons set out herein, the district court's order to Grand Trunk to accord Barrett an earlier seniority date is affirmed, and the case is remanded for further proceedings consistent herewith.