**Thomas J. BURY, Plaintiff,**

v.

**GENERAL MOTORS CORP., Chevrolet Motor Div., Defendant.**

**No. C 76–546.**

United States District Court, N. D. Ohio, W. D.

Sept. 6, 1979.

---

**43.** Nuclear energy now supplies 12.5 per cent of the nation's electricity (D's Exh. 8, vol. 2, p. 135).

**44.** See, *e. g.*, notes 18, 21, 41, 42.

Patrick J. Foley, Asst. U. S. Atty., Toledo, Ohio, by William H. Berger, U. S. Dept. of Labor, Atlanta, Ga., for plaintiff.

John G. Mattimoe, Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for defendant.

## MEMORANDUM and ORDER

WALINSKI, District Judge:

This cause is before the Court on cross-motions of the parties for summary judgment as to liability. This is an action to redress losses incurred by plaintiff by reason of defendant's alleged violation of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, 38 U.S.C. § 2021, *recodifying* 50 U.S.C. Appx. § 459 (hereinafter "the Act"). The Court has jurisdiction pursuant to 38 U.S.C. § 2022.

### I.

The basic or evidentiary facts of the instant controversy are undisputed. Plaintiff was first hired by defendant on July 1, 1968, taking a position as an inspector. In the Fall of 1968 he applied and took the examination for a position as die-maker's apprentice. On the eligibility list for that position which was posted February 19, 1969, he was ranked third. In the time between his application and the posting of eligibility rankings, however, he was called for induction into the Armed Services pursuant to the Selective Service Act. His last day of work with defendant was January 23, 1969, and he began a military leave of absence from defendant's employ on the date of his induction, February 25, 1969. On March 17, 1969, the third position on the apprentice eligibility list was reached for placement. As defendant was in the military, he was passed over and the applicant with the next lower ranking was selected for the opening.[1]

Plaintiff was discharged from military service on January 8, 1971. On February 24, following an earlier informal inquiry, he formally applied for reinstatement and was hired as an inspector on March 1. He was then re-tested for eligibility as a die-maker's apprentice, ranking third on an eligibility list posted April 1, 1971. He was not placed as an apprentice, however, until June 21. Defendant delayed placement for that additional period of two months and three weeks due to its uncertainty as to the scope of plaintiff's rights under the Act and under the applicable collective bargaining agreement. Notwithstanding his third-place ranking, plaintiff was the first person admitted to the apprenticeship program from the April, 1971 list. Subsequent to plaintiff's entry into the program, his seniority as an apprentice was adjusted to March 17, 1971.

---

1. Apprentices are selected from the eligibility list in order of their ranking as openings occur. The existence of an opening depends on defendant's determination that, due to attrition or increased production, additional journeymen die-makers will be required four years in the future. New lists are announced approximately every six months. Because openings arise on the basis of projections as to future needs, it is not uncommon for a list to be announced with no appointments made from it. Indeed, there have been periods of more than a year in which no apprentice openings occurred.

Plaintiff progressed satisfactorily through the apprenticeship program. In February, 1975, however, defendant was forced to effect temporary plant-wide reductions in the number of production employees due to a decrease in sales of its primary product, new automobiles. Under the applicable collective bargaining agreement, apprentices were laid off first (in order of seniority) prior to the layoff of any journeymen in the same classification. On February 3, 1975, plaintiff was laid off as an apprentice die-maker but exercised his seniority rights as an inspector and remained employed in this lower-paying position until September 22, 1975, when he was recalled to work as an apprentice die-maker. During the period February 3 through September 22, no journeyman die-makers were laid off. Two months after his recall, on November 24, 1975, plaintiff completed the apprenticeship program and acquired journeyman status with a seniority date of April 10, 1969.

## II.

At the material times, the Act provided in pertinent part:

*(b) Reemployment rights*

In the case of any [person inducted into the Armed Forces pursuant to the Selective Service Act] who, in order to perform such training and service, has left or leaves a position (other than a temporary position) in the employ of any employer and who (1) receives [a] certificate [of satisfactory completion of military service], and (2) makes application for reemployment within ninety days after he is relieved from such training and service * * * —

\* \* \* \* \* \*

(B) if such position was in the employ of a private employer, such person shall—

(i) if still qualified to perform the duties of such position, be restored by such employer or his successor in interest

to such position or to a position of like seniority, status, and pay.

\* \* \* \* \* \*

*(c) Service considered as furlough or leave of absence*

(1) Any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] shall be considered as having been on furlough or leave of absence * * *

(2) It is declared to be the sense of Congress that any person who is restored to a position in accordance with the provisions of paragraph (A) or (B) of subsection (b) [of this section] should be so restored in such manner as to give him such status in his employment as he would have enjoyed if he had continued in such employment continuously from the time of his entering the armed forces until the time of his restoration to such employment.

\* \* \* \* \* \*

50 U.S.C. Appx. § 459 (1970), *recodified with formal revisions at* 38 U.S.C. § 2021, Pub.L. 93–508 § 404, 88 Stat. 1594, *as amended,* Pub.L. 94–502 § 608, 90 Stat. 2405.[2]

The gist of plaintiff's claim in the instant proceeding is that he was entitled under the Act to placement as a die-maker's apprentice within a reasonable time after he requested reinstatement in defendant's employ, that defendant's four-month delay in so placing him was unreasonable, and that if he had been afforded prompt admittance to the apprenticeship program he would have completed the program and acquired journeyman status prior to the layoff of February, 1975. As no journeymen die-cutters were affected by that layoff, he contends, his loss of pay (i. e. the difference in compensation between a journeyman die-maker and an inspector from February 3 to September 22, 1975) is directly attributable

---

**2.** The Act has been codified and recodified on various occasions, often with minor revisions. *See Hanna v. American Motors Corp.,* 557 F.2d 118, 119 n. 1 (7th Cir. 1977) (noting that, be-

cause the revisions have been by-and-large only formal, the precedents under the various versions of the Act are "largely interchangeable").

to defendant's wrongful conduct in failing sooner to admit him to the apprenticeship program. Defendant raises essentially two arguments in opposition to these claims: First, that the Act did not entitle plaintiff to placement as an apprentice die-maker upon his return from military service but guaranteed no more than reinstatement as an inspector; and second, that the delay in placement was not unreasonable, even assuming that placement was required by the Act.

These arguments are before the Court, as noted, on cross-motions for summary judgment. In order to prevail on such a motion, the moving party must demonstrate that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. Rule 56(c), F.R.Civ.P. In the instant case, of course, the evidentiary facts are undisputed. Agreement on these facts, however, does not of itself preclude the existence of genuine disputes as to ultimate facts. *See, e. g., Winters v. Highland Ins. Co.*, 569 F.2d 297 (5th Cir. 1978). Nor are such issues foreclosed by the fact that each party has moved for summary judgment, claiming the facts to be undisputed for purposes of his or its motion. 6 *Moore's Federal Practice* ¶ 56.13 (2d ed. 1948, 1978).

Rather, in the context of the present case, summary judgment for plaintiff is permissible only if the undisputed facts and the inferences to be drawn from those facts, when viewed most favorably to defendant, conclusively establish that plaintiff was entitled to placement as an apprentice on his return from military service and that the length of defendant's delay in so placing him was unreasonable. Conversely, summary judgment for defendant is proper only if the undisputed facts, viewed most favorably to plaintiff, conclusively establish either that plaintiff was not entitled to an apprenticeship placement or that defendant did not unreasonably delay in so placing him. Applying that standard here, the Court is persuaded that plaintiff's motion is well-taken and should be granted.

*A. Entitlement to placement*

■ The right secured to a returning veteran by the Act is not merely the right to have his former job back. The veteran is, rather, guaranteed the place with his employer that he would have occupied had he continued in his employment during the time of his military service. *Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002, 52 L.Ed.2d 595 (1977); *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230 (1946). In appropriate circumstances, this protection extends to affording the veteran a right to missed promotions or pay increases which he would have received if he had been at work and not in the military. *Tilton v. Missouri Pac. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); *Brooks v. Missouri Pac. R. Co.*, 376 U.S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964). Of course, not every promotion or pay increase is one as to which it can be said that the veteran would have received it but for his absence in the military. Often the receipt of such benefits is contingent on a large number of variables, among them the employer's discretionary judgment, the employee's ability to satisfy the requirements for receipt of the benefit, and the availability of funds or open positions. *See McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265, 271–73, 78 S.Ct. 1222, 2 L.Ed.2d 1305 (1958). What the Act protects is the veteran's right to such benefits when as a practical matter they would have accrued to the veteran on a virtually automatic basis. *Id.*

In *Tilton, supra*, the Supreme Court announced the standard to be applied in cases like the present one, where the benefit claimed by the veteran is an upgrading dependent on a training requirement:

[W]e conclude that Congress intended a reemployed veteran, who, upon returning from military service, satisfactorily completes his interrupted training, to enjoy the seniority status which he would have acquired by virtue of continued employment but for his absence in military service. *This requirement is met if, as a matter of foresight, it was reasonably*

*certain that advancement would have occurred, and if, as a matter of hindsight, it did in fact occur.*

376 U.S. at 181, 84 S.Ct. at 602 (*emphasis added*). In the instant case, "as a matter of hindsight," plaintiff was in fact advanced into the apprenticeship program on his return from the military and successfully completed the program requirements. The question is, therefore, whether—"as a matter of foresight"—it was "reasonably certain" that his entry into and successful completion of the program would have occurred. The Court believes that it was.

When plaintiff left for the military, he had already been tested for a ranking on the apprentice eligibility list and that test had resulted in a third-place ranking. As described in note 1, *supra*, admission into the program when openings occurred was accomplished in order of the applicants' eligibility rankings. Thus, at the time plaintiff left for the military it was reasonably certain that if he had remained at work he would have been entitled to admission into the program when an opening occurred.

Defendant argues, however, that there was no reasonable certainty that there would have been an opening for plaintiff to fill. Relying on evidence that its need for apprentices varied widely from time to time, and that periods of years have gone by in which no apprentices were selected, *see* note 1, *supra*, defendant contends that the existence *vel non* of an opening was simply not predictable when plaintiff left its employ. This argument is not well-taken. As the Supreme Court said in *Brooks, supra*, "[t]he possibility that the 'balance between supply and demand' would have prevented petitioner's otherwise automatic promotion" is insufficient to render uncertain or unforeseeable his entry into the position. 376 U.S. at 185, 84 S.Ct. at 580. *See also Alabama Power, supra*, 431 U.S. at 591–92, 97 S.Ct. 2002 (reasonable certainty not defeated by the possibility of unpredictable occurrences); *Barrett v. Grand Trunk Western R. Co.*, 581 F.2d 132 (7th Cir. 1978) (the "foresight" branch of the *Tilton* stan-

dard is directed not to the foreseeability of an opening's occurring but to the foreseeability of the employee's entry into the opening should it occur); *Witty v. Louisville & Nashville R. Co.*, 342 F.2d 614, 616–17 (7th Cir. 1975); *Whitmore v. Norfolk & Western R. Co.*, 61 CCH–LC ¶ 10,573, at pp. 17,892–17,893 (N.D.Ohio 1969). *But see Rozas v. Cameron Iron Works, Inc.*, 83 CCH–LC ¶ 10,407, at p. 17,625 (S.D.Tex. 1978).

Nor does the fact that *Tilton* and *Brooks* involved the rights of veterans who had already been admitted to training programs serve as a principled basis for distinguishing those cases from the present one. The question is simply whether the benefit was virtually "automatic" or subject to the employer's discretion. Here it is undisputed that entry into apprenticeship openings as they occurred was automatic in order of eligibility ranking. Because at the time plaintiff entered military service all the steps had been taken to assign him an eligibility ranking, the possibility of his being called for an apprenticeship opening was less certain than that of the *Tilton* and *Brooks* plaintiffs only by reason of the vagaries of supply and demand. As noted above, those uncertainties are insufficient to support a claim that plaintiff's advancement was less than "reasonably certain."

In short, on the undisputed facts, it is reasonably certain that the opportunity for advancement into defendant's apprenticeship program which arose after plaintiff's departure for military service was a benefit which plaintiff would have secured but for his absence. It is, of course, immaterial that the opening had been filled by another and that there were no openings when plaintiff returned, since it was the opening which had previously occurred to which he was entitled. *See Schaller v. Board of Education*, 449 F.Supp. 30, 83 CCH–LC ¶ 10,558, at p. 18,194 (N.D.Ohio 1978). On plaintiff's return from military service, therefore, he was entitled to placement in the apprenticeship program.

## B. The delay in placement

As described above, plaintiff returned to defendant's employ on March 1, 1971, and was admitted to the apprenticeship program on June 21. The delay in placement from March 1 to April 1 was caused by defendant's insistence that plaintiff be re-tested for eligibility as an apprentice, due at least in part to changes in apprenticeship standards during plaintiff's absence. The delay from April 1 to June 21 was caused by defendant's uncertainty as to plaintiff's right to apprenticeship placement under the Act and the applicable collective bargaining agreements.

The Act does not in terms describe how promptly an employer must reinstate a returning veteran and provide him with the benefit of advancements occurring in his absence. Plainly, however, there comes a point at which a delay in affording full reinstatement is tantamount to a refusal to reinstate during the period of the delay. Thus, as numerous courts have recognized and as defendant essentially admits, the right to reinstatement is a right to reasonably prompt reinstatement and any delays by an employer must rest on some reasonable footing or be in violation of the Act. *See e. g., Teamsters Local 612 v. Helton,* 413 F.2d 1380, 1385 (5th Cir. 1969); *Tarvin v. So. Pac. Transp. Co.,* F.Supp., 81 CCH–LC ¶ 13,200 (C.D.Cal.1977); *Dame v. C. A. Batson Co.,* 157 F.Supp. 862 (D.Mass. 1958); *Hood v. Lawrence,* 138 F.Supp. 120 (D.N.H.1955); *Rudman v. Lens Craft Studios, Inc.,* 12 CCH–LC ¶ 63,628 (S.D.N.Y. 1947); *Donaldson v. Tennessee Coal, Iron & R. Co.,* 68 F.Supp. 681 (N.D.Ala.1946); *Troy v. Mohawk Shop, Inc.,* 67 F.Supp. 721 (M.D. Pa.1946).

In the instant case, the Court cannot say as a matter of law that defendant's refusal to place plaintiff as an apprentice was unreasonable during the time necessary to re-determine his eligibility for apprenticeship. The Act does not require an employer to afford the returning veteran promotions for which he is unqualified. A delay to assure possession of the requisite qualifications can hardly be called unreasonable. *See Tarvin, supra.*

By contrast, the nearly three-month delay *after* plaintiff had demonstrated his qualifications cannot be deemed reasonable. The sole articulated basis for defendant's failure to provide plaintiff with the benefit to which he was entitled during this period was defendant's uncertainty as to whether plaintiff had a right under the Act to placement as an apprentice. The Court assumes (as it must on a motion for summary judgment) that defendant's doubts in this regard were held in complete good faith. The fact remains that mistaken beliefs as to a returning veteran's rights do not constitute a reasonable basis for denying those rights. *Dame, supra.* An employer's good faith is irrelevant to the question whether it has complied with the Act. *Hanna v. American Motors Corp.,* 557 F.2d 118, 122 (7th Cir. 1977); *Helton, supra,* 413 F.2d at 1385. In delaying plaintiff's placement, defendant caused him to suffer a loss. It took a risk in so doing that its judgment as to plaintiff's rights would be—as it in fact was—in error. Having taken the risk, it must now bear the loss. As the Court of Appeals said in *Helton,*

> We have no doubt that all parties acted in good faith \* \* \* [The] reasons [for delay] evince perfect legitimacy and good faith. However, the fact remains that amidst all this legitimacy and good faith, Helton suffered losses which Congress has said he shall not suffer.

413 F.2d at 1385.

Because the undisputed reasons for defendant's delay in placing plaintiff during the period April 1 to June 21 are insufficient as a matter of law, that delay was wrongful and in violation of the Act. For that reason, plaintiff's motion for summary judgment as to liability will be granted and judgment will be entered holding defendant liable for any injuries proximately caused by the failure to place plaintiff as an apprentice after April 1, 1971.

### III.

For the foregoing reasons,

IT IS ORDERED that defendant's motion for summary judgment is overruled.

IT IS FURTHER ORDERED that plaintiff's motion for summary judgment is granted, and IT IS ORDERED, ADJUDGED AND DECREED that defendant herein is liable to plaintiff for any injuries proximately caused to plaintiff by reason of defendant's failure to afford him an apprentice position on and after April 1, 1971.

IT IS FURTHER ORDERED that this cause is continued for further proceedings as to the issue of damages.