**Harry W. SMITH, Plaintiff,**

v.

**MISSOURI PACIFIC TRANSPORTA-TION CO., Defendant.**

**No. LR 3245.**

United States District Court
E. D. Arkansas, W. D.

Dec. 18, 1961.

James W. Gallman, Asst. U. S. Atty., Little Rock, Ark., for plaintiff.

Herschel H. Friday, Jr. of Mehaffy, Smith & Williams, Little Rock, Ark., for defendant.

HENLEY, Chief Judge.

This rather unusual case, arising under the reemployment provisions of the Selective Training and Service Act of 1940, 50 U.S.C.A. Appendix, § 308, and of the Selective Training and Service (Universal Military Training and Service) Act of 1948, as amended, 50 U.S. C.A. Appendix, § 459, has been tried to the Court and submitted upon the pleadings, a stipulation of facts, oral testimony, numerous exhibits, and written briefs. This memorandum incorporates the Court's findings of fact and conclusions of law.

The basic facts of the case are substantially undisputed, and many of them have been stipulated. Such facts may be stated as follows:

Prior to July 14, 1942, plaintiff, Colonel Harry W. Smith of Little Rock, Arkansas, had been employed for a number of years by defendant, Missouri Pacific Transportation Co., a motor carrier, as its District Supervisor at Little Rock. On July 14, 1942, plaintiff, who had previously held a commission in the Arkansas National Guard, was given a commission as a Captain in the Army of the United States and left his private employment to engage in military service. His orders to active duty were dated July 15, 1942, and he actually commenced duty July 29, 1942.

When World War II ended in 1945, plaintiff did not leave military service and was not retired finally under March 31, 1953. When he was retired he was given a certificate of satisfactory military service. Indeed, the evidence discloses that Colonel Smith's military record both during and after World War II was an extremely creditable one.

Within due time after his separation from military service plaintiff applied to defendant for restoration to his old position or to one of like status, seniority, and pay, and after prolonged negotiations and investigations of plaintiff's claimed right to reemployment, his application was denied.

In this action plaintiff seeks to be restored to his former position and also seeks a money judgment for lost pay. The complaint is drawn in two counts, the first being based upon section 8 of the 1940 Act, and the second upon section 9 of the 1948 Act as amended. Plaintiff's claim that he is entitled to the benefits of the 1940 Act is based upon the theory that he entered military service in 1942 and remained in such service continuously, and in fact involuntarily, until his final separation in 1953. The claim under the 1948 statute is predicated upon

the theory that in July of that year he voluntarily "entered" the military service by signing a commitment for a three-year tour of active duty, that this tour was extended from time to time without regard to his wishes until he was finally retired in 1953, and that March 31, 1953, was the first time he was able to get out of the Army after signing his 1948 commitment.

It is the position of defendant that plaintiff had no reemployment rights under either the 1940 statute or the 1948 statute at the time he was finally retired in 1953. With respect to the 1940 statute, defendant argues that plaintiff's long stay in the Army, which defendant insists was largely voluntary, operated as a waiver of rights under that statute. As to the 1948 statute the defendant says that if that statute does apply to plaintiff he does not meet the requirements set forth in 50 U.S.C.A. Appendix, § 459(g) (2) since he remained in service voluntarily for more than four years after July 1948.

In the alternative defendant takes the position that even if plaintiff would have been entitled normally to reemployment upon his eventual separation from service, nevertheless he had been away from the transportation industry for so long and conditions in that industry had changed so much that it would have been unreasonable and impractical to require defendant to reinstate him, and that defendant had no comparable position to offer him.

Before turning to the questions of statutory construction and application here involved, the Court will dispose of defendant's alternative contention just mentioned. Although Colonel Smith was out of the civilian transportation business for almost eleven years, and although conditions in that business had changed substantially in the interim, Colonel Smith was capable of filling his former position when he finally separated from military service. In this connection the evidence discloses that plaintiff's duties in the Army involved logistics, including the maintenance and management of heavy motorized equipment, work not greatly dissimilar to his civilian employment. Of course, had plaintiff been restored to his old position he would probably have required some period of adjustment and reorientation, but that is true to a certain extent of any serviceman returning to his old position after any substantial period of military service. The Court feels that plaintiff would have been entitled to a reasonable period of adjustment, and that he could have made such adjustment and performed his duties in a satisfactory manner, at least for the one year period during which he would have been afforded job security under the statute, particularly if he received the cooperation from his fellow employees which he would have had the right to expect.

Actually, the Court is convinced that the unwillingness of defendant to reemploy Colonel Smith stemmed not from any belief that he could not do the work, but from a reluctance to demote his successor who appears to have been a capable man. While such reluctance is understandable, it affords no excuse for defendant's refusal to reinstate plaintiff, assuming that he was otherwise entitled to the benefits of the statute.

In approaching the problems which arise under the statutes in this case it is well to keep in mind that the reemployment provisions of both the 1940 and the 1948 statutes are to be construed liberally in favor of the veteran, but the constructions given must be reasonable and must be in keeping with the intent of Congress to require restoration of the veteran to the same but to no better position jobwise than he would have occupied had he not gone into service. See Fishgold v. Sullivan Drydock & Repair Corporation, 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230; O'Hare v. United States, Ct. Cl., 288 F.2d 705; Horton v. United States Steel Corporation, 5 Cir., 286 F.2d 710; Rix v. Turnbull-Novak, Inc., 8 Cir., 260 F.2d 785; Sularz v. Minneapolis, St. Paul & Sault Ste. Marie R. Co., 8 Cir.,

259 F.2d 122; Meehan v. National Supply Co., 10 Cir., 160 F.2d 346.

Insofar as here pertinent, section 8 of the 1940 Act, 50 U.S.C.A. Appendix, § 308, provided in substance that any person who should be inducted into the armed forces of the United States, and who should satisfactorily complete his military service and receive a certificate to that effect, and who had left a position in private employment to go into military service, would be entitled, upon the completion of his service, to be restored to his old position, or to a position of like status, seniority, and pay, provided that he made timely application for such reinstatement and was capable of performing the duties of his employment, and provided that the employer's circumstances had not changed to such an extent as to make it impossible or unreasonable to so reinstate the employee.

Section 9 of the 1948 Act, 50 U.S.C.A. Appendix, § 459, is essentially similar to section 8 of the former statute, but in the context of this case there is one important distinction between the two statutes. The older statute made no reference to the time spent in military service, whether on a voluntary or involuntary basis, as bearing on the reemployment rights of a returning serviceman. The 1948 Act and subsequent Acts amendatory thereof were not silent in that regard.

Section 9(g)(1) of the 1948 Act, as amended, 50 U.S.C.A. Appendix, § 459 (g)(1), with certain exceptions not here material, provides in substance that any person who, subsequent to the passage of the Act, enlists in the armed forces and who serves for not more than four years, plus any additional service imposed pursuant to law, shall be entitled upon release from service under honorable conditions to all the reemployment rights and other benefits provided in the case of persons inducted into the service under other provisions of the Act. That subsection, of course, has no application to Colonel Smith since he never "enlisted" in the armed forces.

Section 9(g)(2) of the 1948 Act, as amended, 50 U.S.C.A. Appendix, § 459 (g)(2), which is involved here, provides in substance that any person who, subsequent to the passage of the Act, "enters upon active duty," whether or not voluntarily, in the armed forces "in response to an order or call to active duty," shall, upon his relief from active duty under honorable conditions be entitled to all of the reemployment rights and benefits provided in the case of persons inducted into the service if he is relieved from active duty not later than four years after entering upon such duty or "as soon after the expiration of such four years as he is able to obtain orders relieving him from active duty."

Those sections plainly mean that persons affected thereby are, in general, entitled to the reemployment benefits of the Act if they are released from military service within four years of their entry into such service; and they are still entitled to such benefits if they serve beyond four years and such additional service is involuntary. To put the matter another way, the serviceman is entitled to reemployment benefits during his first four years of service or duty, regardless of whether such service or duty is voluntary or involuntary; however, if he voluntarily remains in the service for more than four years, he is not entitled to reemployment benefits.

As to the applicability of section 459 (g)(2) to the instant case the record reflects that in July 1948 plaintiff, pursuant to Army Circular No. 27, dated February 3, 1948, as amended by Army Message, dated June 23, 1948, signed a commitment for three years additional active duty, which commitment was accepted by the Army. The four year period mentioned in section 459(g) (2) expired in July 1952. Hence, in order to qualify for reemployment rights under that section it is incumbent on the plaintiff to show that the section applies to him, and to show further that his continuation on active duty after July 1952 was involuntary.

In their briefs the parties have devoted much argument on, and the record is replete with materials bearing upon the question of the voluntary nature of plaintiff's continued service after July 1952. That question is a technical one and is complicated by the fact that plaintiff's "three year" commitment was never intended to be for exactly three calendar years. Depending on which view is taken, the actual initial termination date was either June 30, 1951, or December 31, 1951. The question is still further complicated by the fact that in May 1951 and again in November 1952 plaintiff executed two other voluntary commitments which were accepted by the Army.

It is probable that, regardless of the May 1951 and the November 1952 commitments, the original termination date of plaintiff's 1948 "three year commitment" was actually December 31, 1951. Such seems to have been the position taken by the Adjutant General in correspondence with the Solicitor of the United States Department of Labor in connection with plaintiff's claim. Using December 31, 1951, as the true termination date of the 1948 commitment, plaintiff would have been held in the Army involuntarily until December 31, 1952, by virtue of General Orders No. 27, dated August 11, 1950, as modified by General Orders No. 48, dated July 7, 1951, both of which were issued at the direction of the President and of the Secretary of Defense as authorized by section 2 of the Selective Service Extension Act of 1950. Act of June 30, 1950, Public Law 81-599, 64 Stat. 318, 50 U.S.C.A. Appendix, § 471. Further, the record reflects that plaintiff was kept in service from December 31, 1952, to March 31, 1953, in order that a hernia discovered prior to December 31 might be corrected, and those three months of service would be considered "involuntary."

██ However, the Court finds it unnecessary to rule firmly and finally on said question because the Court is convinced that section 459(g)(2) does not apply to plaintiff. The application of that section is limited to persons who "enter(ed) upon active duty, whether or not voluntarily," in the armed forces "in response to an order or call to active duty." When plaintiff executed his 1948 commitment, he did not thereby "enter upon active duty." He was already in the armed forces and he simply remained therein. There was no disruption whatever of his military service. Nor did plaintiff execute the commitment in response to any "order or call to active duty." A study of Army Circular No. 27 and of the Army Message which has been mentioned makes it clear that plaintiff had a choice of either signing the 1948 commitment or of not signing it. Had he not signed it, or had it been signed and rejected, plaintiff would have been separated from service in due course and in a comparatively short period of time.

In view of the Court's determination that section 459(g)(2) is not applicable to plaintiff, the latter can prevail here only by virtue of the reemployment provisions of the 1940 Act as carried forward into parts of section 9 of the 1948 Act other than section 9(g) (2) of that Act. While section 9(g) (2) does not hurt the plaintiff's case, it does not help him. It simply does not apply to him.

Considering both the 1940 Act and the 1948 Act as being silent as to time as far as Colonel Smith is concerned, the Court finds itself in agreement with the defendant that by his long continued stay in the Army plaintiff must be held to have waived any reemployment rights that he may have had under either statute.

██ In reaching this conclusion the Court does not stop to determine, if indeed it could determine from the present record, the earliest date, if any, prior to July 1948 upon which plaintiff could have secured his release from military service. Even if it be assumed that plaintiff could not have obtained relief from active duty in 1945, 1946, or 1947, it is clear, as indicated, that the signing of

the 1948 commitment was voluntary, and that had plaintiff failed to sign it he would have been separated from service. When plaintiff signed that commitment and requested three years additional duty he waived any existing reemployment rights that he might have had.

■ In adopting the reemployment provisions of the statutes in question Congress clearly intended to protect the civilian employment of servicemen entering the armed forces on essentially a temporary basis and intending to return to their civilian pursuits as soon as legally possible. It is quite another thing to say that Congress intended to grant reemployment rights to individuals entering the armed forces for the purpose of making military service a career, or to those who deliberately elect not to be separated from the service and who remain therein long after they could have been relieved of their military obligation. That the latter was not the intent of Congress is shown by the very adoption of sections 9(g) (1) and (2) of the 1948 Act.

The Court is not impressed by the argument advanced on plaintiff's behalf that he actually had no choice in connection with the 1948 commitment and the other commitments that have been mentioned. In 1948 plaintiff was a man of mature years and experience and held relatively high military rank. He is bound to have been familiar with military regulations and procedures. The Court is convinced that the commitments executed by him were voluntary and were made with full understanding of his legal rights.

In the Court's estimation plaintiff enjoyed the military life and intended to remain on active duty as long as he might be able to do so. In this connection it may be noted that plaintiff's military service dates back to the American intervention in Mexico in 1916; that for years prior to World War II he held a commission in the Arkansas National Guard; that he resigned that commission only when the intensified training activities of the Guard prior to the outbreak of World War II began to interfere seriously with his civilian occupation; that he went back into service at an early stage of the war and that after serving approximately six years he voluntarily committed himself for three additional years. It is likewise to be noted that in 1957, after having worked as an automobile salesman and as an employee of the Arkansas State Senate, he found employment with the Arkansas State Military Department, and is now employed by that department.

Nothing said in the foregoing paragraph is to the discredit of Colonel Smith —quite the contrary. But, employers as well as servicemen have rights. And an employer has a right to expect that an employee who has gone into military service and who intends to invoke the reemployment provisions of the statute will separate himself from the service as soon as he can do so legally and honorably, and to assume that when the employee voluntarily remains in service after having had a full and fair opportunity to get out, such action on the part of the employee manifests an election not to seek restoration to his old job.

It may be true that Colonel Smith always had in mind the possibility of returning to defendant's employ when his military service finally should have ended, and it appears that he had some informal discussions and correspondence along those lines with company officials. But the Court is convinced that Colonel Smith's plans to go back to work for the defendant were entirely contingent upon his not being able to remain in active military service.

Judgment will be entered dismissing the complaint with prejudice.