James O. GREEN, III, Plaintiff,

v.

**OKTIBBEHA COUNTY HOSPITAL, Defendant.**

No. EC80–35–LS–O.

United States District Court, N. D. Mississippi, E. D.

Aug. 28, 1981.

Falton O. Mason, Jr., Asst. U. S. Atty., Oxford, William Burger, U. S. Dept. of Labor, Atlanta, Ga., L. K. Cooper, Jr., U. S. Dept. of Labor, Birmingham, Ala., for plaintiff.

Jeffrey A. Walker, Fuselier, Ott, McKee, Flowers, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

SENTER, District Judge.

This case came on for trial on July 30, 1981, before the court sitting without a jury. Plaintiff James O. Green, III, brought this action pursuant to 38 U.S.C. § 2021 et seq. (Veterans' Reemployment Rights Act), seeking both reinstatement to his former position with Defendant Oktibbeha County Hospital as well as lost wages and other benefits accruing to him because

of the hospital's failure to reemploy him after his service on initial active duty for training with the Mississippi Army National Guard.

The court having heard the evidence, having observed the demeanor of the witnesses on the stand and otherwise having been fully advised in the premises hereby rules that the hospital violated Section 2024(c) of the Act when it failed to reemploy plaintiff after his period of initial active duty for training. This memorandum order represents the court's findings of fact and conclusions of law as required under Rule 52 of the Federal Rules of Civil Procedure.

## FINDINGS OF FACT

Plaintiff James O. Green, III, was originally employed by Defendant Oktibbeha County Hospital on August 14, 1975, as an office clerk in a part-time capacity while attending Mississippi State University.

In July, 1976, plaintiff obtained the full-time position of credit manager and in November, 1976, was promoted to the position of business office manager. The title of this position was changed in January, 1978, to patient accounts manager, with responsibility over the data processing, insurance and business offices.

While working at Oktibbeha County Hospital and residing in Starkville, Mississippi, plaintiff became reacquainted with then Captain (now Major) Charles Carter of the Mississippi Army National Guard, who serves as the Operating and Training Specialist for his battalion (2nd Battalion, 114th Field Artillery) headquartered in Starkville, Mississippi. Plaintiff and Major Carter had previously been acquaintances at Mississippi State University, where plaintiff had served in the R.O.T.C.

On several occasions during May and June, 1978, plaintiff and Major Carter discussed the possibility of plaintiff joining the Mississippi Army National Guard.

In early July, 1978, Major Carter discussed with plaintiff the position of Physicians' Assistant with the National Guard.

The position was part-time and involved the supervision of the weekend and summer camp training of the medical section of the Guard unit and would not interfere with normal civilian employment. There was a current open slot in Major Carter's unit for a Physicians' Assistant.

Sometime shortly prior to July 14, 1978, plaintiff had a conversation with Mr. Arthur C. Kelly, Director of Oktibbeha County Hospital, in the hospital parking lot, during which plaintiff informed Mr. Kelly of his intent to join the Mississippi Army National Guard and of his desire to get into the Physicians' Assistant School, which would encompass a two-year program beyond the four month initial active duty for training. Plaintiff asked Mr. Kelly for his opinion about the Physicians' Assistant program and asked if Mr. Kelly would write a letter of recommendation to help plaintiff get into the Physicians' Assistant program. At this time, both plaintiff and Mr. Kelly knew that Physicians' Assistants were not licensed to practice in Mississippi. Plaintiff, to this time, does not know which states have legalized the position.

Mr. Kelly responded by writing a letter dated July 14, 1978, to Sgt. Hardin of the Mississippi Army National Guard which read as follows:

It is my pleasure to recommend very highly James O. Green to the National Guard as a candidate for Physicians Assistants School. Jim has worked in a very responsible position for the past year and a half and has fulfilled his responsibility very admirably. He matured very rapidly in his job and at this point has been delegated a great deal of responsibility without direct supervision.

We at Oktibbeha County Hospital will regret the loss of his services, however, I understand that this is a great opportunity to advance in a career of his choice. Should you desire any further information, please feel free to contact me.

It is the finding of the court that Mr. Kelly believed on July 14, 1978, that plaintiff intended to use the National Guard training program to become a Physicians'

Assistant and that Mr. Kelly believed plaintiff would not be returning to Oktibbeha County Hospital although Mr. Kelly never identified with full clarity the exact words used by plaintiff which led Mr. Kelly to draw this conclusion.

It is also the finding of the court that plaintiff never purposely intended to lead Mr. Kelly to believe that his joining the National Guard meant he would not be returning to the hospital. The court finds that plaintiff viewed the reference in the July 14, 1978, letter to "loss of services" as referring only to his four month active duty absence.

Plaintiff actually joined the Mississippi Army National Guard on July 31, 1978, and informed Mr. Kelly on that date or the next day.

By orders dated August 31, 1978, plaintiff was ordered to active duty for training for the period beginning September 27, 1978. The orders read that the period would continue until completion of Military Occupation Speciality Training (approximately 4 months but not less than 12 weeks).

On September 8, 1978, plaintiff submitted a Request for Training Duty Leave of Absence to Mr. Kelly to begin on September 25, 1978.

Mr. Kelly wrote a note on the form which read as follows: "Mr. Green, insofar as we are concerned, tendered his resignation by informing us that he intends to enlist in the Guard to pursue training and future employment as a Physician Assistant. Consequently, the job of Manager, which he now holds, was filled immediately. He is currently working out what we consider Termination Notice."

Plaintiff thereupon made it clear to Mr. Kelly at a meeting on September 8, 1978, that he had not resigned in July, 1978, and that he could not understand how Mr. Kelly had arrived at that conclusion.

Plaintiff immediately contacted Major Carter to inform him of Mr. Kelly's note and was told by Major Carter that he had reemployment rights after serving with the National Guard.

No written resignation was ever submitted by plaintiff, nor was one requested. Mr. Kelly testified that it was the policy of the defendant not to accept oral resignations and to require that all resignations be submitted in writing, although a written resignation was not always received. Generally, a two-weeks notice is ordinarily given to defendant for resignations.

In the meantime, since early 1978, Ms. Faye Owens, Mr. Kelly's executive secretary, was being trained in the areas of Mr. Green's responsibilities for the purpose of filling in during the absences of clerical employees or of Mr. Green. Her position as executive secretary to Mr. Kelly was not immediately filled.

On August 7, 1978, Ms. Owens was placed in Mr. Green's position and he was assigned to concentrate on the collection of overdue accounts. His personnel card reflected that he was reassigned as a "collector" on August 7, 1978, at no reduction in pay. Plaintiff testified that he was never informed of this title change, and he continued to refer to himself as patients account manager on hospital forms which were reviewed by Mr. Kelly after August 7, 1978.

The reassignment of plaintiff to the "collector" position was clearly for the benefit of the hospital to allow Ms. Owens to be trained while plaintiff was still present and to have plaintiff perform a job which needed to be done.

At all times, plaintiff's performance with defendant was satisfactory or better, and it is clear that but for plaintiff's entrance onto active duty for training, his employment with defendant would have continued indefinitely.

Plaintiff withdrew his contributions to the hospital's pension fund because he believed the extra money would be needed at his reduced level of pay in the National Guard, even though he was informed that he would forfeit the hospital's share of the contributions.

At no time was plaintiff guaranteed acceptance into the Physicians' Assistant Training program by National Guard offi-

cials, nor did plaintiff ever represent to Mr. Kelly that he was guaranteed of attending Physicians' Assistant Training.

Major Carter testified that shortly after plaintiff joined the National Guard on July 31, 1978, plaintiff knew that he could not go straight through from initial active duty for training to Physicians' Assistant school, even if he were accepted, and that he would have to return to the hospital after initial active duty for training.

Plaintiff's last day with the hospital was September 22, 1978, and his personnel card was marked "9/22/78—Resigned."

After successfully completing basic training at Fort Leonard Wood, Missouri, on November 16, 1978, plaintiff was assigned to Fort Sam Houston, Texas, for his Military Occupation Specialty Training. By orders dated November 29, 1978, plaintiff was informed that his active duty for training would end on January 16, 1979.

Knowing that he would be released from his training duty on January 16, 1978, plaintiff wrote to Mr. Kelly on December 29, 1978, informing Mr. Kelly of the impending release and requesting his reemployment rights under the Act. He indicated he would be available to start work on January 22, 1979.

By letter dated January 8, 1979, Mr. Gary R. Parvin, an attorney representing the defendant, responded to plaintiff's December 29, 1978, letter by indicating plaintiff had no reemployment rights with defendant because plaintiff (a) had permanently resigned in July, 1978; (b) had left a temporary position, and (c) that it was unreasonable to restore him even if it were his right under the Act because it would mean replacing Ms. Faye Owens.

Plaintiff was honorably discharged on January 16, 1979, and was selected as the Outstanding Leader of Class # 004–4, Basic Medical Specialist Course, Academy of Health Sciences, Fort Sam Houston, Texas. The class consisted of 476 graduates.

On January 22, 1979, plaintiff, accompanied by Major Carter, personally applied for reemployment with defendant, but was denied reinstatement by Mr. Kelly, who stated that there was no way plaintiff's position could have been held open for any length of time.

Plaintiff applied for unemployment compensation in January, 1980, and received payments totaling $298.00, notwithstanding the fact that a resignation disqualifies such receipt if the employer so informs the state.

Plaintiff first applied for Physicians' Assistant training in 1980 and was eventually not selected because only five positions were filled nationwide.

At the time plaintiff left his employment with defendant on September 22, 1978, he was earning in excess of $10,000.00 per year.

Faye Owens, who replaced plaintiff as patient accounts manager, received $12,000.00 per year effective August 7, 1978. Her annual salary was raised to $15,000.00 on May 14, 1979, to $16,200.00 on May 12, 1980, and to $17,500.00 in May, 1981.

Plaintiff was employed by Post American Finance on March 1, 1979, at $162.00 per week. He was increased to $179.00 per week on May 1, 1979, to $189.00 per week on August 24, 1979, and to $199.00 per week on February 14, 1980. On April 14, 1980, his salary was increased to $1,150.00 per month and on September 1, 1980, to $1,225.00 per month. His most recent increase was on March 1, 1981, to $1,325.00 per month.

## CONCLUSIONS OF LAW

The court has jurisdiction of the subject matter and of the parties in this case pursuant to 38 U.S.C. § 2022.

"The statute is to be liberally construed..." (*Coffy v. Republic Steel Corp.*, 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980)).

The Act "evidences Congress' desire to minimize the disruption in individual's lives resulting from the national need for military personnel. It seeks to accomplish this goal by guaranteeing veterans [and reservists and National Guardsmen] that the job they had before they entered the military

will be available to them upon their return to civilian life" (*Alabama Power Co. v. Davis*, 431 U.S. 581, 584, 97 S.Ct. 2002, 2004, 52 L.Ed.2d 595 (1977)).

Plaintiff's right to reemployment arises under 38 U.S.C. § 2024(c) which provides protection to "[a]ny member of a Reserve component of the Armed Forces of the United States who is ordered to an initial period of active duty for training of not less than twelve consecutive weeks."

While § 2024(c) speaks only in terms of entitlement to "all reemployment rights and benefits provided ... for persons inducted...," it is the court's considered opinion that a reservist returning from an initial period of active duty for training must also meet the conditions imposed upon inductees to be entitled to reemployment rights, such as, (a) satisfactorily completing military service, (b) leaving an "other than temporary" position, and (c) being still qualified to perform his preservice or escalator position. The employer should also be able to raise the limited exception to reemployment of changed circumstances making it impossible or unreasonable to reinstate the reservist.

It is the court's conclusion that plaintiff did not orally resign his employment with defendant in July, 1978. While Mr. Kelly may have mistakenly believed there was a resignation, his failure to ask for a *written* resignation, which failure was directly contrary to the admitted rules and practice of the hospital, was the direct cause of the ensuing confusion. Moreover, since, in essence, defendant is claiming that plaintiff waived his right to reemployment by allegedly resigning (*cf. Fortenberry v. Owen Brothers Packing Co.*, 267 F.Supp. 605, 607 (S.D.Miss.1966) aff'd. 378 F.2d 373 (5 Cir. 1967) (claim of waiver by failing to give any notice of anticipated military induction)), that "waiver by a veteran [or reservist or National Guardsman] of his statutory rights must ... be clearly and unequivocally indicated' " (*O'Mara v. Petersen Sand & Gravel Co., Inc.*, 498 F.2d 896, 897 (7 Cir. 1974); *Peel v. Florida Dept. of Transp.*, 500 F.Supp. 526, 528 (N.D.Fla.

1980)). Mr. Kelly never indicated with the required clarity precisely what plaintiff stated that could be construed as a waiver. And, as of September 8, 1978, plaintiff made it clear to Mr. Kelly that no resignation had ever taken place in July, 1978. Finally, plaintiff's personnel card shows his resignation as September 22, 1978.

Even if plaintiff's actions in July, 1978, or September, 1978, could be viewed as a resignation, he still cannot be denied reemployment rights under the Act for it is established law under the Act that in determining whether a veteran, reservist or National Guardsman has reemployment rights, "[t]he test is whether or not he was required to leave his employment to report for [military duty] ...." (*Fortenberry v. Owen Brothers Packing Co., supra*). "[T]he fact that he resigned to do so is of no consequence "*Jennings v. Illinois Office of Education*, 83 CCH Labor Cases ¶ 10,408 at page 17,628 (S.D.Ill.,1978) aff'd. 589 F.2d 935 (7 Cir. 1979) *cert. den.* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979); *Duey v. City of Eufaula, Alabama*, 87 CCH Labor Cases ¶ 11,620 at page 22,528 (M.D.Ala. 1979); *Blackford v. Nashville Gas & Heating Co.*, 68 F.Supp. 997, 999 (M.D.Tenn. 1946)). Clearly, the evidence shows that plaintiff left his employment with defendant to perform initial active duty for training with the National Guard and for no other reason. In fact, he worked for defendant right up to the time he had to report for initial active duty for training.

Moreover, until the time plaintiff left his position on September 22, 1978, he had not even applied for Physicians' Assistant training and had not been accepted. Certainly plaintiff had not made a career choice before leaving defendant's employ, and there is no way he could have made such a choice in July, 1978, before he had even been accepted into the National Guard. *Cf. Hillard v. New Jersey Army National Guard*, 91 CCH Labor Cases ¶ 12,808 at page 17,742 and n.5 (D.N.J.,1981) holding that a resignation to follow a career with the Army Corps of Engineers deprived the reservist of reemployment rights where the reservist

had made his decision to stay in the Army *after* he had entered on training duty with the National Guard, had already been issued orders releasing him to the Army Corps of Engineers from the National Guard and had submitted a *written* resignation and "his resignation was considered by all concerned to be a permanent severance of his employment relationship . . . ." (*id.*). *See also Widel v. Caterpillar Tractor Co.*, 83 CCH Labor Cases ¶ 10,605 (S.D.Iowa 1978); *Davis v. Halifax County Sch. System*, 508 F.Supp. 966, 969 (E.D.N.C.1981).

■ The court further holds that plaintiff left an "other than temporary" position with defendant in September, 1978, and is entitled to be reemployed as patient accounts manager. The fact that he was assigned to do collections only and was given reduced duties pending his leaving for military service does not make his pre-service employment or any reassigned position "temporary" under the Act. In *Atlantic Tobacco Co. v. Morganti*, 67 CCH Labor Cases ¶ 12,344 (D.S.C.1971), upon being informed that Mr. Morganti was going to enlist in the United States Air Force Reserve, the employer had him train his replacement and then transferred Morganti from his salesman position to a job in the warehouse "because of his impending military induction and as a convenience to the employer" (67 CCH Labor Cases ¶ 12,344 at page 23,171). The court rejected the employer's claim that Morganti left a "temporary" position and ordered him reemployed as a salesman. The principle of *Morganti* applies equally here where it was established that plaintiff was reassigned as a "collector" for the benefit of the hospital pending his leaving. Moreover, it is clearly established that but for plaintiff's leaving his employment to serve on active duty for training with the National Guard, his employment would have continued indefinitely. Under the principle of *Moe v. Eastern Air Lines, Inc.*, 246 F.2d 215, 218–220 (5 Cir. 1957) *cert. den.* 357 U.S. 936, 78 S.Ct. 1380, 2 L.Ed.2d 1550 (1958), this makes his pre-service position "other than temporary" under the Act. *See also Skeene v. Village of Moscow, Ohio*, 84 CCH Labor Cases ¶ 10,678 at pages 18,614–18,615 (S.D.Ohio 1978).

■ The fact that plaintiff withdrew his retirement contributions prior to entering military service because of his need for additional monies does not deprive him of reemployment rights. *See Borseth v. City of Lansing*, 338 Mich. 53, 61 N.W.2d 132, 137 (1953) interpreting the Michigan equivalent of the federal veterans' reemployment rights law.

■ The court must also reject defendant's claim that it was unreasonable or impossible to reinstate plaintiff on January 22, 1979, because it would have meant replacing Ms. Faye Owens, the incumbent patient accounts manager. It is the clearly established rule of law under the Act that "[t]he statutory exception excusing a refusal to re-employ a veteran [or reservist or National Guardsman] where reinstatement would be unreasonable is a very limited exception to be applied only where reinstatement would require creation of a useless job or where there has been a reduction in the work force that would reasonably have included the veteran. [citations omitted]. It is not sufficient excuse that another person has been hired [or promoted or transferred] to fill the position vacated by the veteran nor that no opening exists at the time of re-application. [citations omitted]" (*Davis v. Halifax County School System*, supra, 508 F.Supp. at 968, and cases cited therein). *See also Bury v. General Motors Corp.*, 476 F.Supp. 1262, 1267 (N.D.Ohio 1979) ("It is, of course, immaterial that the opening had been filled by another and that there were no openings when plaintiff returned. . . ."); *Atlantic Tobacco Co. v. Morganti, supra; Smith v. Missouri Pacific Transp. Co.*, 208 F.Supp. 767, 769 (E.D.Ark.1961) aff'd 313 F.2d 676 (8 Cir. 1963) ("[Reluctance to demote the veteran's successor] affords no excuse for defendant's refusal to reinstate plaintiff . . . ."). In this case, defendant had ample time as of September 8, 1978, to realize that Ms. Owens would not be a permanent replacement for plaintiff but chose instead to leave her in that position and to deny plaintiff his reemployment rights in violation of the Act.

The fact that defendant may have been mistaken as to its obligations under the Act concerning the reemployment of plaintiff is irrelevant for "[t]he fact remains that mistaken beliefs as to a returning veteran's [reservist's or National Guardsman's] rights do not constitute a reasonable basis for denying these rights. . . . An employer's good faith is irrelevant to the question of whether it has complied with the Act (*Bury v. General Motors Corp.*, supra, 476 F.Supp. at 1268); *Cason v. Emanuel County Board of Education*, 85 CCH Labor Cases ¶ 11,244 at pages 20,880–20,889 (S.D.Ga.1979); *Duey v. City of Eufaula, Alabama*, supra, 87 CCH Labor Cases ¶ 11,520 at page 22,530).

Defendant's reliance on *Lee v. City of Pensacola*, 634 F.2d 886 (5 Cir. 1981) is misplaced. *Lee* involved a National Guardsman whose rights arose under § 2024(d) of the Act which provides reemployment after short periods of active duty for training. Plaintiff's rights in the instant case arise under § 2024(c) of the Act. The issue in *Lee* was whether the National Guardsman was entitled to reemployment with the City of Pensacola where he initially had requested and was granted a six-week leave of absence and then unilaterally extended his leave for almost another five months without permission. The Fifth Circuit, while recognizing that § 2024(d) did not place a limit as to the length of time for which a leave for active duty training must be restricted, nevertheless held that a rule of reasonableness should apply and held that "[u]nder the circumstances of this case . . . Lee's conduct did not meet the rule of reasonableness . . . ." (634 F.2d at 890). The court fails to find any analogy between what the Fifth Circuit was dealing with in *Lee* and the issues posited in this case. Equally inapposite is *Monroe v. Standard Oil Co.*, — U.S. ——, 101 S.Ct. 2510, 69 L.Ed.2d 226 (1981), which dealt with still another section of the Act (§ 2021(b)(3)), and with an issue totally alien to this case.

It is, therefore, the court's conclusion that plaintiff is immediately entitled to reinstatement with defendant in the position of patient accounts manager at the rate of pay presently earned by the incumbent.

It is also the court's conclusion that plaintiff is entitled to lost wages and other benefits for the period January 22, 1979, to the time he is properly reemployed. That amount, which is $10,613.14 as of July 31, 1981, was calculated by taking the difference between what Ms. Faye Owens earned in the position of patient accounts manager and what plaintiff has earned at Post American Finance for this period. The amount will continue to accrue at the rate of $135.00 per month. *See Bankston v. Stratton-Baldwin Co., Inc.*, 441 F.Supp. 247, 253–254 (S.D.Ala.1977); *O'Mara v. Petersen Sand & Gravel Co., Inc.*, 77 CCH Labor Cases ¶ 11,152 at page 19,937 (N.D.Ill.1974).

Plaintiff is entitled to prejudgment interest at the rate of 10 percent per annum on the amount found due, which is $1,325.00 through July 31, 1981. *See Hembree v. Georgia Power Co.*, 637 F.2d 423, 429–430 (5 Cir. 1981); *Peel v. Florida Dept. of Transp.*, supra, 500 F.Supp. at 528 and cases cited therein; *Coffy v. Republic Steel Corp.*, 91 CCH Labor Cases ¶ 12,843 (N.D.Ohio 1981).

A deduction of $298.00 will be made for state unemployment benefits received by plaintiff. *Chernoff v. Pandick Press, Inc.*, 440 F.Supp. 822, 826–27 (S.D.N.Y.1977).

An appropriate order will be entered.