**Arne ELLERMETS, Jr., Petitioner,**

v.

**DEPARTMENT OF the ARMY, Respondent.**

No. 90–3058.

United States Court of Appeals, Federal Circuit.

Oct. 16, 1990.

Peter B. Broida, Cohen, Broida & Associates, Arlington, Va., argued, for petitioner.

With him on the brief was Robert Fiore, O'Haire & Fiore, West Germany, of counsel.

George M. Beasley, III, Sr. Trial Counsel, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued, for respondent. With him on the brief were Stuart M. Gerson, Asst. Atty. Gen. and David M. Cohen, Director. Also on the brief was Donald W. Perkal, Office of Staff Judge Advocate, Dept. of Army, Heidelberg, of counsel.

Before NIES, Chief Judge, and ARCHER and LOURIE, Circuit Judges.

PER CURIAM.

Arne Ellermets, Jr. appeals from the final decision of the Merit Systems Protection Board ("Board"), *Arne Ellermets, Jr. v. Department of the Army,* 42 M.S.P.R. 192 (1989), affirming the Army's decision to remove him from civilian employment for being absent without leave on October 11th and for failure to obey orders. The misconduct arose out of the Army's disapproval of leave for Ellermets to perform military duty as a reservist. Since petitioner has not shown that the Board's decision was not in accordance with law or was unsupported by substantial evidence, we affirm.

BACKGROUND

On October 1, 1988, petitioner, Arne Ellermets, was employed as a civilian General Engineer of the United States Corps of Engineers working in Heidelberg, West Germany. On that date, he made a request to reserve Army Colonel William B. Hobgood in Vicksburg, Mississippi, to attend an Army Topographic Conference in Washington, D.C., being held October 11–14, 1988. Ellermets was a captain in the Army reserves and sought to attend the conference. The attendance at the conference was not, however, mandatory training. This verbal request for duty was followed on October 2nd by his submitting a written request through his reserve unit in Germany; the request was handled by Major Vulcan.

Although no approval was received from Vicksburg, on Sunday, October 9th, Major Vulcan signed a disposition form for his superior, Colonel West, stating:

[p]er conversation between Colonel Hobgood and Colonel West, CPT Arne Ellermets Jr. is requested to perform Army Reserve Duties, 10–15 Oct 88 by attending the Army Topographic Conference in Washington D.C. Orders will be provided as soon as possible, from Vicksburg, Mississippi.

There is no explanation why this form was issued. The facts stated therein were not true. Col. Hobgood (Vicksburg) and Col. West (Heidelberg) had not spoken and on October 11th Ellermets' request was formally disapproved by the Vicksburg command.

Petitioner had left the disposition form, together with a request for leave and notes, dated October 9th, stating that he had to report for reserve duty in Washington, for his immediate supervisor, Lieutenant Colonel Robert A. Mentell. These papers were stuck in the door at his workplace, apparently on Sunday. October 10th was Columbus Day, a national holiday and non-work day.

On October 11th, petitioner went to the Frankfurt airport to fly to Washington for the conference instead of reporting to work. His request for leave, the disposition form, and the notes were discovered in LtC. Mentell's office that morning. Petitioner's Division Chief in Heidelberg, Colonel Kenneth W.H. Chun, became aware of the request for leave, telephoned Colonel West, and learned that Colonel West had assumed that petitioner had approved leave from his civilian employment to attend the conference. Colonel West thereupon cancelled Ellermets' reserve duty, for which orders had not been issued at that time. LtC. Mentell disapproved petitioner's leave.

In view of the above action, Major Richard L. Rollo, in the capacity of acting branch chief in Heidelberg, called the military information booth at the Frankfurt airport on October 11th and asked that

petitioner be contacted before his flight departed and advised that he had no approved leave or approved military travel. Petitioner was contacted by Cpl. Martin, who testified that he gave the message to Ellermets and told him to call Major Rollo. Petitioner refused to change his travel plans or call. On being advised by Cpl. Martin of Ellermets' action, Major Rollo then called a representative of Pan American Airlines and asked that the same message be given to petitioner. In the interim, Cpl. Martin again spoke with Ellermets and pointed to a telephone within twenty feet. There were still twenty minutes to departure. Herr Gerber of Pan Am again gave the message to Ellermets. Ellermets responded that he had a passport, had purchased the ticket with his money, and could not be stopped from boarding the plane. Petitioner boarded the plane and his flight departed, arriving in Washington that day. He was met at the airport by military authorities and advised to return to Germany on an evening flight that day. While Ellermets attended the conference on October 12th, he cut short his attendance and returned to West Germany, reporting to work on the afternoon of October 14th.

On October 14th, LtC. Mentell proposed in writing to have Ellermets removed from his position on the grounds that petitioner (1) was absent without leave from October 11–14 and (2) deliberately failed to follow orders. Petitioner replied to this proposed removal letter on October 24th by stating that he mentioned to his supervisor that he was "awaiting orders," that the communication at the airport was "confusing" as his plane to the United States was about to leave, and that "too little time was available to clarify the situation and still make [his] flight." He conceded that he could have called his supervisor at home before departing. His supervisor categorically denied knowledge that Ellermets had plans to attend the conference or was intending to take leave.

On November 7th, Colonel Chun, the deciding official, effected Ellermets' removal. He indicated that an employee must obtain prior approval for leave, including leave for military reserve duty, and that petitioner did not request leave in advance; he rejected as faulty Ellermets' premise that normal leave procedures did not apply to leave for reserve duty; and he stated that Ellermets deliberately disregarded repeated directions to return to work. Colonel Chun also relied on petitioner's repeated past failures to follow leave procedures, which resulted in two suspensions and one reprimand, all documented. On appeal to the Board, the Board sustained Ellermets' removal. We affirm.

## ISSUES

Whether the Board applied an incorrect standard or improperly applied the standard in determining that petitioner was absent without leave.

Whether substantial evidence supports the charge that petitioner deliberately failed to follow orders.

## DISCUSSION

We review the Board's decision to determine if it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; procedurally defective; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (1988). Petitioner contends that the Board applied an incorrect standard in its consideration of whether the Army violated statutory obligations concerning dismissal of employees who engage in reserve training; he maintains that substantial evidence does not support a finding that petitioner deliberately failed to follow orders from his employer.

### I. The AWOL Charge

Petitioner argues that, under Section 2024(d) of the Veterans' Reemployment Rights Act, 38 U.S.C. § 2024(d), his request for leave was improperly denied by the Army; he asserts that the Board erred in not so concluding. Section 2024(d) provides in pertinent part:

[a]ny employee [who is a member of a Reserve component of the Armed Forces of the United States] ... shall *upon request* be granted a leave of absence by

such person's employer for the period required to perform active duty for training or inactive duty training in the Armed Forces of the United States. (Emphasis added).

Petitioner contends that the developed case law interpreting Section 2024(d) required the Board to consider a variety of factors in determining whether the Army improperly denied his leave request, including the lack of burden on his employer, and not to focus only on the lack of timely request for leave and advance approval. He cites *Lee v. City of Pensacola*, 634 F.2d 886 (5th Cir.1981), as establishing a "rule of reason" inquiry into whether a leave request is reasonable and should be granted. *Id.* at 889.

It is incontrovertible that the first task in interpreting a statute is to look to its express language. In this case, the language "upon request" in Section 2024(d) can only mean that, barring an emergency or other special circumstances in which the country needs to call up its reserves, an employee must request, *i.e.*, ask for, a leave of absence to attend reserve duty.

In this case, the Board did acknowledge and apply the reasonableness test of *Lee* and found that no reasonable request was made. On Sunday, petitioner left his leave request and a note indicating that he had been called to reserve duty, when Monday was a holiday, *i.e.*, under circumstances in which his superior would learn of that fact on Tuesday, after petitioner had left for reserve duty in the United States. By this scenario petitioner gave his superiors no chance to disapprove his leave request. Even accepting his argument that he was called on short notice, the record shows that petitioner called Colonel Hobgood in the United States to try to arrange his attendance at the conference as early as October 1st. Thus, petitioner had the opportunity to discuss that possibility with his superiors and to "request" leave for the purpose of reserve duty; petitioner even admitted that he could have tried to contact his superiors before departing. He was also advised that his leave was denied and he thereafter remained absent.

The Board found that "[petitioner] arranged his military reserve training without ever requesting leave from his civilian employer prior to his departure." *Arne Ellermets, Jr.* at 4 [42 M.S.P.R. 192 (table)]. The Board also found that petitioner departed for the conference "despite the denial of his leave." *Id.* at 5 [42 M.S.P.R. 192 (table)]. The denial of leave, which was communicated to petitioner within hours of the receipt of his leave request, is a compelling factor in the evaluation of this matter.

Since the undisputed facts support the Board's finding that the request made by petitioner, if deemed a "request" at all, was unreasonable, the Board accordingly committed no error in upholding the charges that petitioner was absent without leave and that the Army did not act contrary to statute in dismissing petitioner.

## II. The Failure to Follow Orders Charge

■ Petitioner contends that the finding that he deliberately failed to follow orders from his employer is unsupported by substantial evidence. Substantial evidence has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahles v. Dept. of Justice, I.N.S.*, 768 F.2d 327, 329 (Fed.Cir.1985) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).

Our role as an appellate court is to ascertain whether there was substantial evidence for the Board to find that orders for petitioner not to board his intended plane and to call Major Rollo immediately had been conveyed to him at the airport and whether petitioner deliberately failed to follow those orders. Clearly, if such orders were given, they were not followed, because it is not questioned that petitioner boarded his scheduled flight and did not call Major Rollo from the airport.

Major Rollo's Memorandum For Record states that he asked Specialist Davis at the Frankfurt airport specifically to tell peti-

tioner at the airport that "[p]er COLs Chun and West his leave and orders are disapproved [and] [c]all [him] immediately." *J.App.* 17. This memorandum also states that Corporal Martin called Major Rollo and said that he had told petitioner at the airport that "Col Chun and Col West had disapproved his travel and that he was to call MAJ Rollo immediately"; the memorandum also stated that "Mr. Ellermets informed CPL Martin that 'they can't do that' and that if he called MAJ Rollo he would miss his flight"; also, that Pan Am employee, Herr Gerber, "had spoken with Mr. Ellermets and asked him to call me [and] Mr. Ellermets informed Herr Gerber that he had a passport and had purchased the ticket with his own money and we would not stop him from boarding the plane."

Corporal Martin's Sworn Statement states that he located petitioner at the airport about an hour before the scheduled departure of petitioner's plane and told petitioner that he had " 'just received a call from Major Rollo who asked me to tell you that Colonel West and Colonel Chun have denied your leave,' . . . [and] that Major Rollo didn't want him to get on the plane and that he wanted [petitioner] to call." After reporting to Major Rollo, Corporal Martin again told Ellermets to call Rollo and suggested that petitioner use a pay phone twenty feet from them to call him. *J.App.* 19.

Roger M. Ryan, an Army Topographic Engineer, stated in his Memorandum For Record that he met petitioner upon his arrival in Washington and "clearly advised [petitioner] 'that [his] TDY orders had been cancelled, that he had no leave orders approved, that attempts to tell him that and to get him to call his office had been made at Frankfurt prior to his departure, and that he had no authority to be in CONUS.'" Ryan told petitioner that he was in fact AWOL and advised him to return on the next flight to Frankfurt scheduled to leave in about two hours. *J.App.* 50. Petitioner did not return on that next flight.

Petitioner admitted before the Board that conversations at the airport occurred, but asserts he just thought there was a problem with his leave. He recalled that an airline representative spoke to him, but he did not recall being asked to call Major Rollo. The Board weighed the evidence of record and, while recognizing that there was some dispute over the nature of the messages given to petitioner, found the Army's position that direct messages were given to petitioner more credible than petitioner's denials because of the consistency of the statements and the fact that the majority of them were given by disinterested witnesses. All of this evidence supports the Board's decision.

Petitioner cites *Phillips v. General Servs. Admin.*, 878 F.2d 370, 373 (Fed.Cir. 1989), for the proposition that insubordination, which is equivalent to a deliberate failure to follow orders, is a charge that requires that an employee willfully and intentionally refuse to obey an authorized order of a superior officer. He argues that absence without leave does not constitute a deliberate failure to follow orders. We appreciate the distinction, but in this case, we believe that there was substantial evidence that orders were given to petitioner at the airport and he intentionally refused to obey them.

We note finally that petitioner argues that there is a difference between a charge of deliberate failure to follow orders and a finding that petitioner deliberately disregarded repeated directives that he return to work, as stated in Colonel Chun's decision to remove petitioner. *J.App.* 32. We do not find there to be an inconsistency. Orders not to board the plane and to call his superior were equivalent, under these circumstances, to a directive to return to work. Petitioner also argues that the Board only found absence without leave and, because of that, found insubordination. We note that the Board found

that specific orders were given to petitioner and that they were not followed; this conclusion is distinct from the "absent without leave" charge, which was based on its own facts.

We therefore conclude that the Board did not err in determining that petitioner was absent without leave, and that there was substantial evidence to support the charge that petitioner deliberately failed to follow orders. The decision of the Board is hereby affirmed in all respects.

AFFIRMED.